May it please the court. My name is Anna Benvenue. I'm appearing on behalf of Petitioner Sarjeet Singh Gill. Today the court is reviewing an adverse credibility decision in a post-Real ID Act case in which the petitioner alleges that his statutory and due process rights to present evidence were violated. In this case, Mr. Gill's statutory and due process rights were clearly violated when the immigration judge prevented his expert witness from testifying. The court today must conduct a de novo review of that issue. And why? Well, Your Honor, the issue of whether a due process right was violated is reviewed de novo. What due process right is there to have testimony live as opposed to submitted in written form? It's not so much that the testimony needs to be live as much as where the immigration judge denied me the right to present testimony in the way that he wanted to. Well, where is there a right to present testimony in the way I want? In trials. Lots of judges, particularly in bench trials, and this is a trial in front of an IJ, require testimony, expert testimony, for example, to be presented in declaration form with possible cross-examination. But I know of no right that just because somebody wants to present the testimony live that there's a right to do so. I understood, Your Honor. In this case, the So what's the problem here? Well, the problem here is that while the expert did submit a report, she would have been able to testify to other things. And in this case Did she write the report? The expert. Is there anything that prevented her from putting those other things into the report? No, but the things that she was prevented from putting in the report are the things that arose during the course of the testimony of Respondent. Did she volunteer or did counsel volunteer to have her submit a written report on those subjects? She didn't, but counsel offered to have her testify orally as to those subjects. And the immigration judge said that she would not hear that testimony. And the expert could have. And so we go right back to the question. Where is there a right to oral testimony as opposed to submission in a different form? Well, the statute expressly provides a right to present evidence on Respondent or Petitioner's behalf. And so that there's a statutory right. And she had. And that she needed to present evidence in addition to help to contradict the immigration judge's assumptions about a number of things that had arisen during Respondent's testimony or Petitioner's testimony in court. Assuming, assuming there's some kind of right, due process or otherwise, that you claim, still, in order to, you know, get anywhere with that, I think you have to show prejudice, don't you, from the denial of that right? Yes, Your Honor. And what's the, tell me your, what's your best case on prejudice? Well, Your Honor, it seems clear in this case that the prejudice standard is only that he has to show the error may have affected the outcome in this case. And here, where he was, where the immigration judge and the Board of Immigration Appeals upheld an adverse credibility finding, the issue is whether the expert statements could have helped ameliorate some of the immigration judge's findings on credibility. And there's two specific ways here where the expert testimony could have helped. One is that the immigration judge mischaracterized the statements written in the expert's report. She misquoted them and cited them in a way that is inaccurate. And that would have been less likely to happen had she actually heard. And you say that affected the IJ's credibility finding of the petition? It did, Your Honor, because the expert in this case was able to talk about how the kind of context of arrest, why in the Punjab at certain times certain people are arrested around certain special commemorative holidays. And on the specific incident, on one in particular petitioner's arrest, it occurred after Vaisakhi Day in June 2005. And the report addressed how hundreds of people that were members of political parties were arrested right after that commemorative day. And was there, like, an offer of proof as to what else you would have testified to, the expert, I mean? Yeah. The attorney that represented Petitioner before the immigration judge was trying to get in and explain what the expert could offer beyond her report. But she was immediately shut down by the immigration judge. In fact, the immigration judge started that line by saying, I have no interest in calling the expert. And when the immigration attorney attempted to explain why she thought it would be valuable, the immigration judge had very clearly already made her decision and was limiting that, her ability to explain why she would be valuable. Well, suppose the decision with adverse credibility determination is based, for example, on the inconsistent statements with regard to the number of people in the group arrested. How could the expert possibly have anything to say to that? I think that's the one, actually, issue that the immigration judge found that the expert wouldn't have been able to testify to. Well, one is enough, isn't it? It could be. But you have to evaluate that under the totality of the circumstances. And if there was only one inconsistency, this would be a very different decision. Is the one inconsistency in the midst of all otherwise consistent testimony and explained testimony and testimony that the expert provided context for, under the totality of the circumstances, is that enough to support an adverse credibility determination? Doesn't our case law answer that question? Yes. It could, Your Honor, but it would be a different question. And that's not the question before this Court exactly. And if this Court found Why isn't it the question before this Court? Well If the adverse credibility determination can be sustained on a ground that has nothing to do with the expert, then how is there any prejudice resulting from the expert's failure to testify? Well, I think it actually, in this case, cannot. But if there was otherwise credible testimony and the only issue was whether he said that there were 9 or 10 people or 20 to 24 people arrested, he indicated in his explanation of that that he was estimating, that it was guesswork, that he wasn't sure. And how is Never I guessed or I may have been wrong or I may have forgotten a credible explanation for the inconsistent statements? Well So what compels us to conclude that the adverse credibility determination cannot be sustained on that ground? Well, Your Honor, under the totality of the circumstances, the person was being arrested. He was in the midst of a traumatic situation under arrest. He was trying to look around and see how many other people were there. He made his best estimation of that number. It's not a – it's a relatively trivial and insignificant thing to stand to support an adverse credibility finding under the totality of the circumstances where there Well, what you're defining as otherwise credible testimony is testimony that is not otherwise impeached. I mean, the whole thing with these cases is that you – the IJ is trying to figure out whether the story being told is true. Right. As opposed to simply a story that's been learned and is being recited. And that's why I think our case law says individual inconsistencies, if of sufficient strength, one's enough. Why isn't this one enough? Well, it's not enough. Because under the totality of the circumstances here – Where in the case law do we look at the totality of circumstances? Where is there any authority that says one is not enough? Well, Your Honor, the Real ID Act requires that we look at the totality of the circumstances. And this Court has clearly – has consistently interpreted the – that case law. Most recently, I think the Court issued a decision, Shrestha, which is – kind of interprets the Real ID Act and how this Court is to review decisions. And in that case, the Court said that a trivial inconsistency is not enough under the totality of the circumstances. And I think that this qualifies as a trivial inconsistency. I'd like to reserve the remainder of my time for rebuttal. You may. Thank you. Good morning, Your Honors. It's a pleasure to be here. May it please the Court, my name is Justin Markell, and I represent the Attorney General in this case. In this post-Real ID Act case, where the agency is allowed to rely on any relevant factor in finding Petitioner incredible, the Court should affirm the agency's determination because they provide a specific conclusion reasons and the record does not compel an opposite conclusion. In this case, there were three categories of factors that contributed to the adverse credibility determination. One set – one factor was inconsistencies. Now, the Board points out that these inconsistencies were minor. However, they were telling because he was able to otherwise testify very credibly and very consistently with his affidavit. Yeah. I have to say I'm puzzled by the comment by the BIA and that approach. That is, he got all the big things right, and that makes the minor discrepancies more important. I don't follow that at all. Would his testimony have been more credible if he had big things wrong? No, Your Honor. And I understand the confusion. I think the Board could have worded that section of their decision better. But what they were trying to get at is when you look at these discrepancies, these were discrepancies that dealt with information that he should have known if he actually experienced these things but were not included in his affidavit. So these are things that it implies that if you can testify credibly to everything in your affidavit, to very little small details, but then when you're asked about something you should have known that's not in your affidavit and you get it wrong, it implies that you just memorized your affidavit. What in particular do you refer to as an example of what you're talking about, what he got wrong? Okay. So two inconsistencies in particular, and both of them deal with, like I said, information that was not included in his affidavit. So they asked him first what day of the week that he was arrested, and he stated that it was a Tuesday when it was actually a Saturday. Now, that information wasn't in his affidavit. However, it would be reasonable to assume that if you were arrested two, two-and-a-half years prior to testifying that you would remember which day of the week. Why is day of the week significant? Well, I think it's like... If you're married, think of an important event in your life. What day of the week did it occur? Do you know that? I don't know what day of the week my kids were born. I don't know what day of the week I met my wife. Why is day of the week something that sticks out? Well, I think being arrested and being beaten. And I think I'm pretty sure this particular arrest... Was an arrest on Tuesday different from an arrest on Thursday or on Saturday? I mean, an arrest is an arrest. No, no. I mean, being arrested and beaten is notable. I imagine that if I was arrested and beaten, I would remember the date. Also, I think... Why? I mean, I understand you're going to remember being arrested.  Why the day of the week? What's significant about day of the week? I think the distinction between weekdays is different. But there seems to be some significance between not knowing whether it's a weekend day or a weekday. It's more plausible, although we don't know anything... I don't know anything about life in India and this person's life if he worked a regular five-day week. I mean, how his week was structured. In Hawaii, lots of people work weekends because it's a visitor industry. So... I don't want to pursue that any further. But I'm not sure the day of the week by itself and whether there's some factor attached to it really sticks out all that much. Well, this arrest also followed an event at the Gurdwara. Now, I'm not sure whether or not these events occur on regular days of the week or if they're every day of the week. But that could also be something that the agency considered. And it might have been if the IJ had explained to us because these events happen on Saturdays and he got it wrong. But I don't see anything about that. And I don't know it and you don't know it. And I don't know how we can assume it. And the IJ didn't explain that reasoning, right? No, you're right, Your Honor. My answer is just in response to your questions. And as I admitted earlier, I think they could have explained this a little bit better. However, there is reason there. It doesn't compel an opposite conclusion either. And the second inconsistency was the one that you already discussed. And I think this inconsistency is even harder to believe seeing how he said he was detained for five days. It's not that he was arrested and brought in. He was at the police station for five days. You would think that over a five-day period you would know if there's 10, 9 to 10, or 20 to 24 people that were there with you. Especially if they're with you for the same reason that you were there. They were participating in a protest outside of the state office. Now, they also found implausibilities in petitioner's statements. In particular, his discussion of his wife and daughter's treatment. Now, I believe this is significant because it's hard to imagine, first, that when you write your affidavit out, that's supposed to be a very specific and detailed description of what happens to you, you state that your wife and daughter were sexually abused. However, when you asked what you meant by that, you tell the asylum officer what you meant was that bad words were used in front of them, profanity was used. Then it gets even more implausible because he then goes and testifies and he states that his wife and daughter were actually raped and they weren't sexually abused, or in his clarified description of what happened, they didn't have profanity used in front of them. Now, he doesn't say when he talked to his wife to receive this information, only that it happened recently before the merits hearing. However, his wife and daughter did submit affidavits in this case that were submitted just a month before he testified. And in those affidavits, they described the treatment as sexual abuse and not rape. Well, sexual abuse is a pretty common term that covers lots of things. Many criminal convictions are for sexual abuse when they really mean more specific sexual conduct. So is it really compelling that the affidavits don't use more graphic descriptions? Well, I would think that if you're trying to present an accurate, detailed description of what happened to you, you're trying to do it in the most detailed way possible. I guess I'm just trying to figure out how is it reasonable to require that Gil's family and friends travel to the U.S. and be subject to cross-examination before their affidavits can be given any weight? Your Honor, I'm not sure. To be completely honest, I think that the I.J.'s decision in that portion is a little rushed. If you go on to see the next finding when she talks about the affidavits sent from the Akali Mall – sorry, I'm always – Akali Dahl Mann Party, she talks about how, again, I'm not giving this document credit because it wasn't authenticated. So it appears that she – when she says again, she's saying – implying that she also didn't give those other documents credit because she didn't – they weren't authenticated. However, Petitioner did not raise that issue to the Board. So it's the government's position that it's not properly before this Court now because the Board wasn't given an opportunity to discuss it. Mr. Markell, let me ask you to address a different issue. One of the contentions that Petitioners make is the Board really ignored the Katt claim and didn't address it at all. First of all, you agree there isn't much in the BIA opinion, is there, on that? I agree there isn't much on the BIA's opinion about that. But the government's position is that, first of all, Petitioner didn't really distinguish his Katt claim from his asylum claim in his appeal to the Board. I never – But the claim was raised. Only in the conclusion. The only mention of Convention Against Torture was – What are you saying? Just raising it in the conclusion is not enough to require it to be addressed? It doesn't raise any specific arguments for the Board to address. It essentially melded those two topics together. All of the arguments went to asylum withholding in the appeal brief to the Board. And then in the very conclusion, they just mentioned Convention Against Torture and didn't distinguish how those two claims were different. Now, in this case in particular where the decision really lies on an adverse credibility determination, it's not clear how those two outcomes would have been different if the Board would have talked even more about the Convention Against Torture decision. Well, I don't think the question is, you know, in my mind whether the outcomes would have been different. But it seems to me when a claim is raised, the BIA has the obligation to address it so we can review it. How can we, you know, review the claim that Petitioner's entitled relief under Katt when the BIA doesn't give its reasons, just essentially ignores it? The government's position is that the Board addressed all the arguments specifically raised. Well, what did it say about the – what did the BIA say about the Katt claim? Well, the government believes that by just saying in the conclusion is not enough to raise the – or not enough to raise the claim. So your position is the claim wasn't raised before the BIA? That is correct, Your Honor. That's the same as, like, failure to exhaust, isn't it? Yes, Your Honor. All right. So if we decide, and I think it's a pretty generous standard, that the claim was raised before the BIA, you agree it was error for the BIA not to address it? I would say it was harmless error because as I discussed earlier, it's unclear how we – I don't know if we – do we apply a harmless error to agency decisions, you know? Yes, Your Honor, you do. Given the Schenry decision that we can only affirm agency decision on the basis articulated by the agency and not on some other reason, which applies to the BIA, right? Right. But I don't understand how in this case there would be any error. I mean, significant – the claim was raised, the BIA erred because it didn't address it, but your claim is harmless error. Now you're saying there's not error. Well, it's the government's position that the claim was not raised. So if you disagree – I understand that. So I'm – so my question is if we disagree with you and we decide that the claim was sufficiently raised before the agency, then it was error for the agency not to address it. You agree with that? As I say earlier, I believe it's harmless error. I'm not sure I can follow your reasoning, but all right. If Your Honor has had no further questions, I would just like to close real quickly and stress the – the Court talked about how it's – Well, don't launch a new subject. You're a minute over time already. I'm sorry, Your Honors. All the rest of my brief. Thank you. Thank you. I'm just going to quickly follow up on the line of questioning there about Catt. I believe Judge Tshishima is right here that Catt is not before this Court. The BIA didn't consider it. They should have. And this Court can't issue a decision about Catt. At minimum, must remand – What do you mean, Catt is not before this Court? You're not bringing it before this Court? No. No, Your Honor. I mean that because the Board – because this Court can't affirm on a finding that the Board didn't make this Court for Catt must remand because the BIA didn't issue a decision and should have, and this Court can't issue a decision where the Board didn't. So what claim does your client have under Catt? Well, the claim that he's more likely than not to be tortured. Right. And what evidence is there that supports that? Well, another claim that's supported by Dr. Mahmoud's statement and – Does she make statements that would support that for everybody in the country? She makes statements that would support it for somebody similarly situated to Mr. Gale. That it's more likely than not that somebody's going to be tortured? Yes. That if you have multiple arrests and that you're on a history-sheeter's list, a police list, and that you're more likely than not to be arrested, that combined with the 2005 Department of State report that indicates what – that torture is common in custodial settings, I think quite easily leads to the conclusion that it's more likely than not, even on this record. But to make out the case that somebody is in Petitioner's position requires Petitioner's testimony to be credible. And if there's been an adverse credibility determination, how can Petitioner prove that he fits within that category? Your Honor, the adverse credibility finding isn't supported by substantial evidence. But you're attacking that. If you attack – if you win your attack on that, you don't need to get to the Catt claim. I just don't see how a Catt claim can stand by itself unless the adverse credibility determination is overturned. Well, the main thing here is that the Board didn't make a Catt decision, and so this Court can't affirm – And I'm saying what possible decision to the alternative could there have been? If the adverse credibility determination stands, your client's got nothing to work with under Catt. Right. And if they had made a decision, you could affirm it if you agreed with it, but they didn't. Finally, I just want to go back. I mean, there's a number of problems here in the I.J.'s decision that weren't addressed before. One is the demeanor finding. In this case, the immigration judge made a demeanor finding without putting any evidence on the record during the record or in her statement about why exactly she made the demeanor finding. No, she said it was programmed. Right. But we have no idea what that means, and it makes it impossible. She's trying to insulate her finding by not giving reasoning because it makes it impossible for this Court or for the Board to review that and decide whether. Well, what do you think programmed means? Well, I don't know, Your Honor. I mean, he's crying while talking about his wife and daughter being raped. Is she saying that he wasn't – no tears were coming out? Is he saying he wasn't making crying sounds? Is he saying that – is she saying that he didn't look like he was actually crying? He just – I have no idea what she's saying. Well. But nobody does. And this Court – Well, maybe you don't, but are you so confident that nobody does? I mean, it means something to me. It suggests to me the person's following a program, following a script, doing what he's supposed to do to try to make the situation seem real serious. It does seem to suggest that. But if the immigration judge had put in the record her reasoning behind her finding, then we could actually review that. But it's really difficult to review when she doesn't do that. Also, as a result, there's not enough remaining credibility issues such that this credibility finding is supported by substantial evidence. And therefore, this Court needs to remand having found respondent credible. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Tashima, Clifton, Murguia